UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| MICHAEL L. JOHNSON, | Case No. 1:21-cv-00003 |
| Plaintiff, | Hopkins, J. |
| v. | Bowman, M.J. |
| RODNEY OSBORNE, *et al.*, | |
| Defendants. | |

**REPORT AND RECOMMENDATION**

Plaintiff, presently incarcerated at the Toledo Correctional Institution, proceeding *pro se* and *in forma pauperis*, has filed a civil complaint pursuant to 42 U.S.C. § 1983. (Doc. 1). Upon initial screening, the Court dismissed all of Plaintiff's claims except his Eighth and Fourth Amendment claims against Defendant Osborne and his First Amendment claim against Defendant Koch. (*See generally*, Docs. 12, 15). This matter is now before the Court on Defendants Osborne and Koch ("Defendants") motion for summary judgment (Doc. 32) and the parties responsive memoranda. (Docs. 43, 44).[1] Defendants assert that they are entitled to judgment as a matter of law because Plaintiff failed to exhaust his administrative remedies as required by the PLRA for either Defendant. In the alternative, Defendants argue that Plaintiff has failed to show any violation of retaliation under the First Amendment, excessive force under the Eighth Amendment, or unreasonable search under the Fourth Amendment. Upon careful consideration, the undersigned finds that Plaintiff has failed to exhaust his administrative remedies as required by the PLRA.

---

[1] Plaintiff has also filed a motion for summary judgment, which is herein denied as moot. (See Doc. 33).

I. **Background and Facts**[2]

On January 4, 2021, Plaintiff initiated this civil rights action under 42 U.S.C. § 1983 alleging thirteen (13) claims against four (4) named ODRC employees in connection with a February 8, 2019 incident at the Southern Ohio Correctional Facility ("SOCF"). On that day, Plaintiff alleges that a neighboring inmate threw fecal matter into his cell. (Doc. 11, at 5).

On April 27, 2021, the undersigned conducted a *sua sponte* review of the Complaint dismissing most claims but allowing the instant three (3) claims against two (2) Defendants to survive. (Doc. 12). Plaintiff was permitted to proceed with his excessive force claim against Defendant Osborne, and out of an abundance of caution, also his Fourth Amendment claim against Defendant Osborne and a First Amendment retaliation claim against Defendant Koch. Id. at 4.

In his Complaint, Plaintiff provides an outline for his version of the events. Plaintiff alleges that another Inmate threw feces into his cell on February 8, 2019. (Doc. 11, at 5). Plaintiff states that he informed Defendant Koch that the other inmate was responsible for the act and asked Defendant Koch to review the camera footage. Id. According to Plaintiff, Defendant Koch ignored him, returned with Sgt. Barney, and placed Plaintiff in a segregation cell. Id. Plaintiff also claims that Defendant Koch had the other inmate throw feces into his cell and that Koch gave the February 8, 2019 conduct report to Plaintiff in retaliation for Plaintiff filing a prior grievance against Koch and other officers. Id. at 7.

Plaintiff goes on to allege that Defendant Osborne used excessive force against him during the process of moving him to a "suicide cell" by spraying him with chemical

---

[2] Because the Court finds that Plaintiff has failed to exhaust his administrative remedies as required by the PLRA, the facts surrounding the incident in question have been abbreviated.

mace and then failing to provide him with a decontamination shower. Further, Plaintiff claims that Defendant Osborne also violated his Fourth Amendment right by conducting a strip search of Plaintiff in front of a female officer that he underwent an unnecessary second strip search because he was under constant supervision between the two searches. Id. at 9, 11.

Following these events, Plaintiff submitted an Informal Complaint Resolution ("ICR") regarding Defendant Koch on February 13, 2019, accusing CO Koch of writing a false report in retaliation that resulted in him being wrongfully segregated as well as being placed on constant watch without following up with any grievance or appeal. (Doc. 32, Wilson Aff. ¶ 15; Ex. 1, Grievance Records, p. 1).  Plaintiff did not file any ICRs or any other grievance document regarding Defendant Osborne in the months following the event that gave rise to the present action. ODRC has a grievance process available for inmates to utilize at all institutions. SOCF inmates, during the timeframe of this incident, used paper grievance forms. (Doc. 32, Ex. 1, Wilson Aff. ¶ 16).

**II.    Analysis**

**A.    Standard of Review**

In a motion for summary judgment, "a court must view the facts and any inferences that can be drawn from those facts . . . in the light most favorable to the non-moving party." *Keweenaw Bay Indian Comm. v. Rising*, 477 F.3d 881, 886 (6th Cir. 2007) (internal quotation marks omitted). "Summary judgment is only appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P.

56(e)) (internal quotation marks omitted). "Weighing of the evidence or making credibility determinations are prohibited at summary judgment—rather, all facts must be viewed in the light most favorable to the non-moving party." *Id.*

After a moving party has carried its initial burden of showing that no genuine issues of material fact remain in dispute, the burden shifts to the non-moving party to present specific facts demonstrating a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S.Ct. 1348 (1986). "The 'mere possibility' of a factual dispute is not enough." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992) (citing *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)). In order to survive summary judgment, the non-moving party must present probative evidence that supports its complaint. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50, 106 S.Ct. 2505 (1986). The non-moving party's evidence "is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. The court determines whether the evidence requires submission to a jury, or whether one party must prevail as a matter of law because the issue is so one-sided. *Id.* at 251-52.

Although reasonable inferences must be drawn in favor of the opposing party, *see id.* at 255, he must present significant probative evidence tending to support the complaint. *First Nat'l Bank of Ariz. v. Cities Servs. Co.*, 391 U.S. 253, 290, 88 S.Ct. 1575 (1968). To demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. 574 at 587 (1986).

4

**B. Plaintiff Failed to Exhaust his Administrative Remedies under the PLRA**

Exhaustion of administrative remedies "is mandatory under the [PLRA] and . . . unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007) (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002)). "[A] prisoner confined in any jail, prison, or other correctional facility" is barred from filing a lawsuit alleging constitutional violations under 42 U.S.C. § 1983 "or any other Federal law . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532.

"A prisoner's failure to exhaust his intra-prison administrative remedies prior to filing suit 'is an affirmative defense under the PLRA.'" *Surles v. Andison*, 678 F.3d 452, 455 (6th Cir. 2012) (quoting *Jones,* 549 U.S. at 216). "[T]he failure to exhaust 'must be established by the defendants.'" Id. (*quoting Napier v. Laurel Cnty., Ky*., 636 F.3d 218, 225 (6th Cir. 2011)). Thus, defendants bear the burden of proof on exhaustion. Id. To succeed, defendants' evidence must satisfy their burden of persuasion, such that "no reasonable jury would be free to disbelieve it." Id. at 456 (*quoting Cockrel v. Shelby Cnty. Sch. Dist*., 270 F.3d 1036, 1056 (6th Cir. 2001)).

The PLRA exhaustion requirement means prisoners must carry out "proper exhaustion" of a grievance. *Woodford v. Ngo,* 548 U.S. 81, 90 (2006). To properly exhaust a claim, a prisoner must take advantage "of each step the prison holds out for resolving the claim internally" and follow the "'critical procedural rules' of the prison's grievance process to permit prison officials to review and, if necessary, correct the grievance 'on the

5

merits' in the first instance." *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010) (quoting *Woodford*, 548 U.S. at 90). "Proper exhaustion [further] demands compliance with an agency's deadlines. . . ." *Woodford*, 548 U.S. at 90. Proper exhaustion serves the necessary interest of providing "fair notice of the alleged mistreatment or misconduct that forms the basis of the constitutional or statutory claim made against a defendant in a prisoner's complaint." *LaFountain v. Martin*, 334 F. App'x 738, 740 (6th Cir. 2009) (citing *Bell v. Konteh*, 450 F.3d 651, 654 (6th Cir. 2006)).

Exhaustion may be excused where the grievance process is unavailable, which includes:

> (1) "when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) when "some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it" because it is "so opaque" or "so confusing"; and (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."

*Lamb v. Kendrick,* 52 F.4th 286, 2292-93 (6th Cir. 2022) (quoting *Ross v. Blake*, 578 U.S. 632, 643-44 (2016)). In order to rely on the excuse of the unavailability of the grievance process, a prisoner must first demonstrate that affirmative action was taken to comply with the prison's grievance process. Id. at 293 (*citing Lee v. Willey*, 789 F.3d 673, 677 (6th Cir. 2015)).

The procedure established for resolving inmate complaints in Ohio, codified in Ohio Administrative Code § 5120-9-31, is a three-step process. First, the inmate is required to file an informal complaint ("ICR" or Informal Complaint Resolution) with the direct supervisor of the staff member or department most directly responsible for the subject matter of the complaint within 14 days of the event giving rise to the complaint.

6

Ohio Admin. Code § 5120-9-31(J)(1). Second, if the inmate is unsatisfied with the response to his informal complaint, he may file a formal grievance with the inspector of institutional services at his institution of confinement. Id. at § 5120-9-31(J)(2). The inspector of institutional services is required to provide a written response to the inmate's grievance within 14 calendar days of receipt of the grievance. Id. If the inmate is dissatisfied with the response, he may undertake the third step of the grievance process and file an appeal to the Office of the Chief Inspector of the Ohio Department of Rehabilitation and Correction (ODRC) within 14 days of the disposition of the formal grievance. Id. at § 5120- 9-31(J)(3). Compliance with this procedure is measured against "the prison requirements, and not the PLRA. . . ." *Jones,* 549 U.S. at 218.

Defendants contend that they are entitled to summary judgment because Plaintiff failed to utilize all three steps of the Ohio Administrative grievance procedure against either Defendant. As noted above, the first step requires Plaintiff to file an ICR within fourteen days of the event giving rise to the complaint. Ohio Admin. Code § 5120-9-31(J)(1). Following the incident on February 8, 2019, Plaintiff submitted an ICR concerning Defendant Koch and the alleged act of retaliation. (Doc. 32, Ex. 1, Wilson Aff., ¶ 15; Ex. 1, Grievance Records, p. 1). The second step requires Plaintiff to file a Notification of Grievance ("NOG") within fourteen days of receiving a response to his ICR. Ohio Admin. Code § 5120-9-31(J)(2). Plaintiff failed to file an NOG after receiving a response for the ICR he submitted regarding Defendant Koch. (Doc. 32, Ex. 1, Wilson Aff., ¶ 15).

Namely, Inspector Wilson states that he reviewed Plaintiff's entire grievance file, noting:

7

> On February 13, 2019, Inmate Michael L. Johnson, #A515-853 submitted an informal complaint resolution ("ICR") to Unit Manager Brian Sparks concerning C/O Koch writing a false conduct report charging Inmate Johnson #AS 15-853 with throwing bodily fluids outside of his cell. Mr. Sparks responded in writing to Inmate Johnson #A515-853 on February 21, 2019, advising that " ... your conduct report is not grieveable, therefore, I find no merit at this time. This was already been heard. You will exercise your right to Appeal this [to] I.S." Grievance Case No. SOCF-02-19-105. Johnson #AS 15-853 did not proceed to the second step, by filing a NOG as suggested by Mr. Sparks. This grievance was not exhausted.

(Doc. 32, Ex. 1, Wilson Aff at 15).

Plaintiff contends, however, that the grievance process was unavailable to him because SOCF Inspector Mahlman denied him a grievance form. Thus, Plaintiff alleges that he was prevented from completing step two of the grievance process.  Accordingly, Plaintiff must now show that he made "affirmative efforts" to comply with the exhaustion requirements that were "sufficient under the circumstances."  See *Lam*b, 52 F.4th at 293.

> Even if an inmate has evidence to show that an administrative procedure was unavailable, he is not automatically absolved from the PLRA's exhaustion requirement because this Circuit requires inmates to make "affirmative efforts to comply with the administrative procedures before analyzing whether the facility rendered these remedies unavailable." [*Lee*, 789 F.3d at 677] (quoting [Napier, 636 F.3d at 223]). "When a prisoner makes affirmative efforts to comply but does not succeed, we analyze whether those efforts to exhaust were sufficient under the circumstances." Id. (quoting [*Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011))] (internal quotation marks omitted).

*Lam*b, 52 F.4th at 293. See *Surles*, 678 F.3d at 457 n.10 ("Only if the plaintiff contends that he was prevented from exhausting his remedies must the defendant present evidence showing that the plaintiff's ability to exhaust was not hindered.").

Here, Plaintiff has attached his own Declaration stating that he "requested a grievance from Inspector Mahlman but were denied a grievance and then was transferred to Madison Correctional Institution on April 11, 2019." (Doc. 43, Ex. 1 at 12, Plaintiff's Ex.

8

5).[3] Plaintiff's unsupported conclusory allegations fail to establish that Defendants, hindered his ability to exhaust the grievance process.

The Sixth Circuit requires an affidavit to contain a certain baseline level of specificity. See, e.g., *Pierce v. Rowland*, No. 20-5731, 2021 WL 3929549, at *4 (6th Cir. Sept. 2, 2021) (citing *Revis v. Meldrum,* 489 F.3d 273, 287-88 (6th Cir. 2007)) ("[A] plaintiff cannot create a fact dispute by submitting an affidavit chock full of conclusory allegations."); *Chambers v. Hardy*, No. 19-5201, 2019 WL 8138590, at *4 (6th Cir. Oct. 30, 2019) (inmate's statements that he "attempted to exhaust" his administrative remedy and "filed a BP-11 and never heard any response on it" were "vague and unsupported by specific facts" necessary to defeat an otherwise proper summary judgment motion); *Belser v. James*, No. 16-2578, 2017 WL 5479595, at *2 (6th Cir. June 6, 2017) (inmate's statements that a grievance coordinator "would not process none of the grievances" and "came to [the inmate's] cell and told [him] to sign off on the grievance and that nothing was going to be done[;]" that he received "no response" from the grievance coordinator after "several kites[;]" and that the grievance coordinator "would not process or give an identifier number for some of the grievances" were too "generalized" to create a genuine issue of material fact).

Furthermore, as noted by Defendants, even if Plaintiff was unable to obtain a grievance form, the PLRA would still require him to file his grievance using other means. see *Lyle v. Jackson*, 49 Fed. App'x. 492 (6th Cir. 2002). In *Lyle*, a prisoner failed to file a grievance but argued that he requested and was denied a grievance form. Id. at 49.

---

[3] Upon careful review, the caption of this declaration relates to another case involving Plaintiff that is currently pending in this court. See *Johnson v. Little, et al.*, Case No. 1:21-cv-171 (Hopkins, J). Because Plaintiff has submitted it as evidence in this matter it will be considered by the court.

The inmate also claimed he had requested a grievance from the prison's law library but received no response. Id. Nonetheless, the Sixth Circuit upheld the dismissal of the inmate's claim because the inmate did not document his request to the library, nor did he attempt to file his grievance without a form. *See also Martin v. Johnson*, 72 F. App'x. 256, 257-58 (6th Cir. 2003) (holding that a prisoner's allegation that he requested a grievance form but did not receive one is insufficient to establish exhaustion); *Anderson v. Meeks*, 79 F. App'x. 113, 114 (6th Cir. 2003) (holding that it is insufficient to claim grievance forms were denied to excuse exhaustion and that a prisoner must attempt to file a grievance without a form) (citing *Jones v. Smith*, 266 F.3d 399 (6th Cir. 2001).

The Court concludes Plaintiff's statements that he was denied a grievance form, standing alone, are not sufficiently specific, on their own, to raise a genuine issue of fact regarding whether his affirmative efforts to comply with step-two of the grievance process were sufficient under the circumstances as to Defendant Koch.

With respect to Defendant Osborne, Plaintiff did not submit an ICR, NOG, or an appeal naming or referring to Defendant Osborne for claims based on events allegedly arising from the incidents on February 8, 2019. (Doc. 32, Ex. 1, Wilson Aff., ¶ 16). Even though Plaintiff filed several ICRs in February and March of 2019, he did not grieve any action of Defendant Osborne from the alleged events that occurred on February 8, 2019. (See Doc. 32, Ex. 1, Wilson Aff., ¶¶ 15-16). Specifically, Inspector Wilson's affidavit states "I did not find any grievance records submitted by Inmate Michael L. Johnson #AS 15-853 concerning Lt. Rodney Osborne." As such, Plaintiff failed to satisfy the mandatory three-step requirement of O.A.C. 5120-9-31(J)(1), (2) & (3).

"There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones,* 549 U.S. at 211.  Accordingly, the undersigned finds that Plaintiff failed to exhaust his administrative remedies pursuant to the mandatory PLRA requirements with respect to his claims against Defendants Koch and Osborne.  Therefore, Defendants are entitled to judgment as a matter of law.

### III.     Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED THAT** Defendants motion for summary judgment (Doc. 32) should be **GRANTED**, Plaintiff's motion for summary judgment (Doc. 33) be **DENIED as MOOT**; and this case be **DISMISSED WITH PREJUDICE** from the active docket of this Court.

 *s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| MICHAEL L. JOHNSON, | Case No. 1:21-cv-00003 |
| Plaintiff, | Hopkins, J. |
| v. | Bowman, M.J. |
| RODNEY OSBORNE, *et al.*, | |
| Defendants. | |

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).